UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GERARD PATRICK MATHEWS,

              Petitioner,

    -v-                                               13-CV-339-JTC

MICHAEL T. PHILIPS, Field Office Director,
Buffalo, NY Field Office of U.S. Immigration
and Customs Enforcement,
Enforcement and Removal Operations,
TODD L. TRYON, Assistant Field Office Director,
Buffalo, NY Field Office of U.S. Immigration
and Customs Enforcement,
Enforcement and Removal Operations,
JOHN T. MORTON, Secretary of U.S.
Customs and Immigration Enforcement,
JANET NAPOLITANO, Secretary of
Homeland Security,
ERIC H. HOLDER, Jr., Attorney General
of the United States,
DEPARTMENT OF HOMELAND SECURITY,

              Respondents.

---

## **INTRODUCTION**

Petitioner Gerard Patrick Mathews, an alien under a final order of removal from the United States, has filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered April 15, 2013 (Item 3), respondent[1] has submitted

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal

an answer and return (Item 7), along with an accompanying memorandum of law (Item 8), in opposition to the petition. In response, petitioner has filed a reply/response (Item 9). For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Ireland, was admitted to the United States at New York, New York on or about September 24, 1989, as a lawful permanent resident. *See* Item 7-1 (Payan Decl.), ¶ 5; Item 1, ¶ 11. According to DHS records, petitioner has the following criminal history:

-On or about December 3, 1990, petitioner was convicted in Yonkers City Court, State of New York, of Public Lewdness, in violation of N.Y. Penal Law § 245.00. He was granted a conditional discharge and was fined $150.

-On or about June 19, 1991, petitioner was convicted, upon verdict after trial, in the Pelham Manor Village Court, State of New York, of Public Lewdness, in violation of N.Y. Penal Law § 245.00. He was sentenced to one year probation and fined $500.

-On or about September 16, 1994, petitioner was convicted in Yonkers City Court, State of New York, of Public Lewdness, in violation of N.Y. Penal Law § 245.00. He was sentenced to one year probation and 60 days incarceration.

-On or about August 5, 1997, petitioner was convicted in Yonkers City Court, State of New York, of Public Lewdness, in violation of N.Y. Penal Law § 245.00. He was sentenced to 90 days incarceration.

-On or about August 18, 1998, petitioner was convicted in Yonkers City Court, State of New York, of Public Lewdness, in violation of N.Y. Penal Law § 245.00. He was sentenced to one year probation and 60 days incarceration.

---

Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* section 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

-On or about June 1, 1999, petitioner was convicted in Yonkers City Court, State of New York, of Public Lewdness, in violation of N.Y. Penal Law § 245.00. He was sentenced to 90 days incarceration.

-On or about August 18, 1999, petitioner was convicted in Yonkers City Court, State of New York, of assault in the 3rd degree, in violation of N.Y. Penal Law § 120.00. He was sentenced to three years probation.

-On or about February 15, 2002, petitioner was convicted in Yonkers City Court, State of New York, of an Act in a Manner to Injure a Child less than 17 years old, in violation of N.Y. Penal Law § 260.10-01. He was sentenced to six months incarceration and an order of protection was issued.

-On or about April 1, 2003, petitioner was convicted in Yonkers City Court, State of New York, of an Act in a Manner to Injure a Child less than 17 years old, in violation of N.Y. Penal Law § 260.10-01 and Public Lewdness, in violation of N.Y. Penal Law § 245.00. He was sentenced to a one year term of incarceration and an order of protection was issued.

-On or about August 25, 2004, petitioner was convicted in Yonkers City Court, State of New York, of Public Lewdness, in violation of N.Y. Penal Law § 245.00. He was granted a conditional discharge and was fined $500.

-On or about July 5, 2011, petitioner was convicted in Yonkers City Court, State of New York, of Public Lewdness, in violation of N.Y. Penal Law § 245.00. He was granted a conditional discharge and an order of protection was issued.

-On or about December 14, 2011, petitioner was convicted in the Bronx County Supreme Court, State of New York, of Public Lewdness, in violation of N.Y. Penal Law § 245.00(b). He was sentenced to 90 days incarceration and an order of protection was issued.

-On or about December 14, 2011, petitioner was convicted in the Bronx County Supreme Court, State of New York, of Resisting Arrest, in violation of N.Y. Penal Law § 205.30 and Public Lewdness, in violation of N.Y. Penal Law § 245.00(a). He was sentenced to 30 days incarceration for Resisting Arrest, 90 days incarceration for Public Lewdness, and an order of protection was issued.

-On or about December 22, 2011, petitioner was convicted in the Yonkers City Court, State of New York, of Public Lewdness, in violation of N.Y. Penal Law § 245.00. He was sentenced to 75 days incarceration.

*See* Payan Decl., ¶ 6.

On October 7, 2011, petitioner was encountered by DHS officers at the Westchester County, New York Jail. After his immigration status was verified, petitioner was placed in removal proceedings by a Notice to Appear, dated December 1, 2011, which charged him with being subject to removal from the United States for the violation of the Immigration and Nationality Act ("INA")–specifically, section 237(a)(2)(E)(I), 8 U.S.C. § 1227(a)(2)(A)(I) (conviction of a crime of domestic violence, stalking, child abuse, child neglect, or child abandonment). Payan Decl., ¶ 7; Item 7-2 ("Exh. A"), pp. 8-10. On December 28, 2011, petitioner was placed in DHS custody pursuant to a Warrant for Arrest of Alien. Exh. A, p. 11.

On December 18, 2011, an immigration judge ("IJ") granted petitioner's request for adjustment of status to lawful permanent resident pursuant to INA § 245(a), 8 U.S.C. § 1255(a), and for a waiver of inadmissibility pursuant to INA § 212(h), 8 U.S.C. § 1182(h). Exh A, pp. 6-7. DHS appealed the IJ's order to the Board of Immigration Appeals ("BIA"). On May 15, 2013, the BIA sustained the appeal and vacated the IJ's decision. Exh. A, pp. 2-5. A Warrant of Removal/Deportation, dated May 20, 2013, states that petitioner is subject to a final order of removal by virtue of the BIA determination. *Id.*, p. 1.

On May 23, 2013, petitioner filed motions to reconsider and for an emergency stay of removal with the BIA. Payan Decl., ¶ 11. Additionally, on May 23, 2013, petitioner filed a petition in the Second Circuit Court of Appeals for review of the BIA order. Item 9-1. On May 24, 2013, DHS sent a presentation packet to the Consulate General of Ireland (the "Consulate") in New York, New York, requesting that a travel document be issued for

petitioner's removal. Exh. A, p. 14. On June 27, 2013, petitioner filed a motion for a stay of removal with the Second Circuit. Item 9-1. Petitioner's motions are pending with the BIA and the Second Circuit. He is currently held at the Buffalo Federal Detention Center pending his removal from the United States. Payan Decl., ¶ 13.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes the detention of aliens after the issuance of a final removal order. In this case, petitioner argues that his detention is pursuant to section 236, as he has challenged the BIA's order by way of a motion to reconsider to the BIA and a petition for review in the Second Circuit. The government contends that the order of removal became final on May 15, 2013 and that, thereafter, petitioner's detention has been pursuant to section 241.

5

Section 236 authorizes detention pending a decision on whether the alien is to be removed from the United States. Under the circumstances presented, section 236 does not govern petitioner's detention. As petitioner was the subject of an administrative final order of removal at the time he was detained on May 15, 2013, his detention has been pursuant to section 241. *See Leslie v. Herron,* 2010 WL 4226561, *2 (W.D.N.Y. Oct. 26, 2010) (alien detained at the time of final order of removal is subject to detention pursuant to section 241). INA § 241(a) requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Here, the removal order is under judicial review, but no court has ordered a stay of removal. Thus the removal period commenced on May 15, 2013, the date of the final order of removal, and expired on August 15, 2013, ninety days later.

Petitioner argues that, as he has filed a petition for review in the Second Circuit, there is currently a *de facto* stay preventing DHS from executing the removal order. As such, he argues, the ninety-day removal period cannot have commenced. In fact, the filing of a petition for review of the final order of removal, accompanied by a motion for a stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the

removal of an alien while he or she has a petition for review pending in the circuit court. *See Persaud v. Holder,* 2011 WL 5326465, *1 (W.D.N.Y. Nov. 3, 2011) (filing of petition for circuit court review of final order of removal, along with motion for stay of removal, triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F.Supp.2d 189, 191 (W.D.N.Y 2010) ("forbearance policy" prevents DHS from removing any alien who has requested a stay of removal with a petition for review of immigration order of removal). However, petitioner was detained on May 15, 2013, when the removal order became final, and the ninety-day removal period commenced on that date. Petitioner's subsequent filing of a motion to reconsider to the BIA and a petition for review of the administrative order of removal in the Second Circuit did not undo the fact that there was a final removal order in place and that detention pursuant to section 241(a) had commenced.[2]

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). Thus, petitioner's detention until August 15, 2013 was mandated by section 241. The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." INA § 241(a)(6).[3]

---

[2] To the extent that *Luna-Aponte v. Holder,* 743 F.Supp.2d 189 (W.D.N.Y. 2010) would suggest that the application of the "forbearance policy" renders petitioner's detention subject to section 236, this court declines to follow it. *See Leslie v. Herron,* 2010 WL 4226561 (W.D.N.Y. Oct. 26, 2010) (detention of alien who is subject to administrative final removal order is governed by section 241 despite application of "forbearance policy"); *D'Alessandro v. Mukasey*, 628 F.Supp.2d 368 (W.D.N.Y. 2009) (parties agreed detention was pursuant to section 241 despite application of "forbearance policy").

[3] INA § 241(a)(6) provides in full as follows:

7

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

As set forth above, in this case petitioner was received into DHS custody on December 28, 2011, pursuant to a Warrant of Arrest of Alien, for detention pending completion of immigration removal proceedings as authorized by INA § 236. *See* Payan

---

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

Decl., ¶ 8. This detention continued until May 15, 2013, when the BIA sustained the DHS appeal from the IJ's order granting petitioner's request for relief, and the order of removal became final. At that time, petitioner's detention was authorized by INA § 241(a), and the removal period commenced. DHS promptly undertook efforts to secure a travel document for petitioner's removal to Ireland by sending a presentation package to the Consulate on May 24, 2013. *See* Payan Decl., § 12; Exh. A, p. 25.

Under *Zadvydas,* petitioner's detention under section 241 is considered presumptively reasonable for a period of six months, or until November 15, 2013. Accordingly, to the extent that the petitioner asserts a claim for release under *Zadvydas,* such a claim is premature. Moreover, petitioner has asserted no facts to support a claim under *Zadvydas*. Under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang v. Ashcroft*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights"). The petition sets forth no factual basis to substantiate a belief that there is no significant likelihood he can be removed to Ireland in the reasonably foreseeable future. As discussed above, DHS promptly commenced efforts to secure travel documents for petitioner's removal to Ireland. Additionally, in recent years,

DHS has successfully repatriated hundreds of aliens to Ireland.[4]

Because the detention challenged by the habeas petition in this action is still presumptively reasonable under *Zadvydas,* the duration of petitioner's detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. Additionally, upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 307 (W.D.N.Y. 2008).

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered

---

[4] For example, DHS statistical reports show that in fiscal year ("FY") 2009, a total of 129 aliens were repatriated to Ireland; in FY 2010, 107 aliens were repatriated to Ireland; and in FY 2011, 58 aliens were repatriated to Ireland. Payan Decl., ¶ 14 (citing DHS Yearbook of Immigration Statistics: 2011, Table 38: http://www.dhs.gov/files/statistics/publications/YrBk11En.shtm).

stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin<br>
JOHN T. CURTIN<br>
United States District Judge

Dated: September 18, 2013
p:\pending\2012\13-339.sept9.2013